## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | |
|---|---|
| **Heather Douglas, Individually and as Mother and Guardian for A.D., a Minor,** | |
| **Plaintiff,** | **Case No.: 4:21-cv-1773-RBH** |
| **v.** | |
| **Brittain Resorts & Hotels, LLC; Ocean Front Investors, LLC d/b/a/ Caribbean Resort & Villas; Hucks Pool Company, Inc.; Caribbean Oceanfront Tower Homeowners' Association, Inc.; Ally Management, Inc.** | **PLAINTIFF'S MOTION TO COMPEL** |
| **Defendants.** | |

**TO:  BRANDON P. JONES, ESQUIRE, ATTORNEY FOR DEFENDANTS, BRITTAIN RESORTS & HOTELS, LLC, OCEAN FRONT INVESTORS, LLC, D/B/A CARIBBEAN RESORT & VILLAS, CARIBBEAN OCEANFRONT TOWER HOMEOWNERS' ASSOCIATION, INC. AND ALLY MANAGEMENT, INC.:**

The Plaintiff, Heather Douglas, Individually and as Mother and Guardian for A.D., a minor, pursuant to Rule 37, FRCP, and by and through her undersigned attorney, hereby moves within ten days or as soon as practicable, for an Order compelling Defendant, Brittain Resorts & Hotels, LLC and Ocean Front Investors, LLC, d/b/a Caribbean Resort & Villas, to respond in full to the Plaintiff's Second Set of Requests for Production.

## FACTUAL BACKGROUND

### A.  The Underlying Incident

This case arises out of Defendant Brittain Resorts & Hotels, LLC and Ocean Front Investors, LLC, d/b/a Caribbean Resort & Villas' ("Brittain Resorts") misconduct in maintaining chlorine levels in the pools[1] at the Caribbean Resort and Villas (hereinafter "Resort") that were both unsafe

---

[1] "Pools" includes reference to the lazy river and spa that are part of the pool facilities at the Resort.

and exceeded limits set under South Carolina law. As a result of the unsafe chlorine levels, Plaintiff A.D., who was only three years old at the time, suffered severe chemical burns to his groin and private areas after swimming in the pools on May 25, 2020. A.D.'s burns were so severe that he was transferred to the UNC School of Medicine Jaycee Burn Center where was admitted for inpatient treatment for seven days. **See Exhibit A**. A.D. endured months of traumatic and painful wound debridement by his mother to treat his chemical burns, and today, he has permanent scarring in his groin and buttocks areas. **See Exhibit B.**

While A.D. was being treated at the Jaycee Burn Center, A.D.'s family contacted the South Carolina Department of Health and Environmental Control (DHEC) and reported that A.D.'s doctors believed his chemical burns were caused by the Resort pools. On May 27, 2020, DHEC sent an inspector to the Resort and tested the pools and ordered the immediate closure of the lazy river and spa that were used by A.D. due to non-compliant and unsafe chlorine and pH levels. **See Exhibit C.** Specifically, pursuant to S.C. Code Section 44-55-2310 *et seq.*, DHEC is authorized to promulgate regulations related to public swimming pools, including the Resort pools at issue here. DHEC regulations mandate chlorine levels remain with the range of 1.0 to 8.0 parts per million (ppm). See DHEC Reg. 61-51, Section J (Operation and Maintenance For All Type Pools), no. 14. Here, the two tests conducted by DHEC revealed the Resort lazy river and spa in which A.D. swam had chlorine levels in excess of 10ppm (">10.00"). A.D.'s treating doctor additionally confirmed his burns were chemical burns causally related to the exposure to high amounts of chlorine in the pools on May 25, 2020. **See Exhibit D.**

### B. Discovery Dispute Background

On or about February 24, 2022, Plaintiff propounded discovery on Defendant Brittan Resorts, including numerous requests for production that broadly covered the claims and defenses

in this action and all information provided to, or received from DHEC from 2019 through the present. In response, among other things, Brittain Resorts produced a copy of DHEC's above-reference May 27th reports and approximately eight pages of Brittain Resort's handwritten pool chemical testing logs of tests conducted on the chemical readings of the Resort pools during the week of May 24th through May 29th. **See Exhibit E.** Notably, the chlorine test results conducted by Brittain Resorts on May 27th in the lazy river (the same day DHEC performed chlorine tests) was significantly lower than the results found by DHEC.

On December 16, 2021, Plaintiff took the deposition of Defendant Brittain Resort's Certified Pool Operator, Juan Rivera. During his deposition Mr. Rivera not only admitted to fraudulently falsifying Brittain Resort's pool chemical testing logs for May 24-May 25, when A.D. was exposed, but he also astoundingly admitted to falsifying the pool chemical logs for over a three-year period of time on behalf of Brittain Resorts.

```
 8      Q.   All right.  I'll tell you he was.  So if you
 9   weren't there on May 24th and May 25th, how could you
10   have possibly known the times and the chlorine amounts
11   when that child was in the pool?
12      A.   I don't.
13      Q.   Did you go back and fill in these times and
14   chlorine amounts after you heard about a child getting
15   burned?
16      A.   No.
17      Q.   So Mr. Rivera, who asked you to go back and
18   fill in the times and chlorine amounts for days that
19   you didn't work?
20      A.   Filled them out for DHEC purposes.
21      Q.   You filled them out for DHEC purposes even
22   though you weren't there, correct?
23      A.   Yes, sir.
```

```
10      Q.   Sir?
11      A.   If the paper don't get filled out, it's a
12   closure for the pool.
13      Q.   Right.  But what I'm asking you is, is
14   according to this, according to page 17, it says on
15   May 24th you checked.  That's your initial.  It says
16   you checked at 7:00 a.m. and the chlorine level was
17   2.5, correct?
18      A.   I wasn't there those days.
19      Q.   Right.  That's what -- that's what the record
20   says though, right?
21      A.   Yeah.
22      Q.   So you falsified this record, didn't you?
23      A.   Yes.
```

**See Exhibit F**.[2]

Mr. Rivera further admitted the Resort was responsible for the chlorination of the pool and the harms it caused.

```
13      Q.   Do you believe Hucks Pool Company is in any
14   way responsible for the chlorine levels on May 27th
15   when the chlorine was over 10?
16      A.   No, sir.
17      Q.   You believe that's Caribbean Resorts'
18   responsibility, right?
19      A.   Yes, sir.
20      Q.   And it would also be Caribbean Resort and
21   Villas' responsibility for the chlorine levels on May
22   24th and May 25th, correct?
23      A.   Yes, sir.
24      Q.   The electrodes or the probes, how often were
25   those cleaned?
```

---

[2] The images from the deposition transcript are included for the Court's reference and convenience. The excerpts are attached as Exhibit F to this motion.

Finally, the Mr. Rivera admitted this fraudulent behavior only stopped after he was noticed for deposition totaling a nearly three year operation of the pools at the Resort in an unsafe manner.

```
 7     Q.   Juan, did you continue falsifying records
 8   after May 30th, 2020?  In other words, did you
 9   continue doing it even the week of May 31st, 2020 and
10   onward?
11     A.   Yes.
12     Q.   And how much longer did you do that?
13     A.   I recently found out about this.
14     Q.   Recently found out about your deposition?
15     A.   Yeah.
16     Q.   And that's when you decided you should stop?
17     A.   Yes.
```

Mr. Rivera's conduct was not only wholly unsafe and inexcusable, but also, illegal. The conduct of Mr. Rivera, and through his agency, the instant Defendants, violated S.C. Code Ann. Regulation 61-51 which requires that public swimming pools are to be closed "immediately" by the owner when the pool log is not properly maintained. Further, S.C. Code Ann. Sec. 44-55-2360 deems it unlawful to violate S.C. Code Ann. Regulation 61-51. This statutory violation and gross mismanagement of its employees and its facilities open the door for punitive damages against these Defendants.

Based on Mr. Rivera's testimony, Plaintiff notified counsel for Brittain Resorts that punitive damages were clearly at play. On December 21, 2021, Plaintiff served these Defendants with a second set of Request for Production seeking records directly related to punitive damages and requesting all pool chemical logs and pool chemical readings from January 1, 2019 through present.

On January 30, 2023, these Defendants served responses to Plaintiff's Second Set of Requests for Production with boilerplate objections ("overly broad," "unduly burdensome," "not

relevant to any claim or defense in this matter," "not proportional to the needs of the case," "not sufficiently limited in time or scope")[3] and only providing substantive responses to 3 of the 10 requests. **See Exhibit G**. These Defendants stated several times that "documents responsive to this request have been requested and will be supplemented upon receipt" but the objections made prior to that response render the response insufficient and leave the Plaintiffs in the dark as to whether an actual intent to provide the information exists.

Defendants' boilerplate objections are not viable or valid bases for which to withhold the requested information, which is directly relevant to Plaintiffs' claims in this case. Therefore, Plaintiffs respectfully request the Court order Defendant Brittain Resorts and Caribbean Resort and Villas to serve full and complete responses.

## DISCOVERY STANDARD

The 2015 revisions to Fed. R. Civ. P. 26(b) control this dispute. Those revisions define the scope of discovery via two considerations: relevance and proportionality.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The Committee Notes to the 2015 revisions emphasize that "[t]he objective

---

[3] The mere statement by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory. *Josephs v. Harris Corp.* 677 F.2d 985, 992 (3d Cir. 1982). Objections that state that the discovery request is "vague, overly broad, or unduly burdensome" are, standing alone, meaningless and should be found meritless by the court. A party objecting must explain the specific and particular way in which a given request is vague, overly broad, or unduly burdensome.[3] *Curtis v. Time Warner Entm't-Advance/Newhouse P 'ship,* 2013 WL 2099496, at *2 (D.S.C. May 14, *2013*).

[of the proportionality analysis] is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." Fed. R. Civ. P. 26(b)(2)(C)(i) provides the procedural tool for guarding against redundancy and disproportionality.

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive…

Fed. R. Civ. P. 26(b)(2)(C)(i). Chief Justice Roberts, in his 2015 Year End Report, provides additional clarification of the balance between relevance and proportionality.

> The amended rule states, as a fundamental principle, that lawyers must size and shape their discovery requests to the requisites of a case. Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery. The key here is careful and realistic assessment of actual need.

Chief Justice's 2015 Year End Report at 7.

## ARGUMENT

Plaintiffs' second set of Requests for Production seek documents highly relevant to the claims and defenses in this case and are narrowly-tailored to be proportional to the needs of this case. Given the importance of the issues in this case, which involve matters of public safety surrounding Defendants' large public Resort pools, and the gravity of the injuries suffered by A.D., Defendants' boilerplate objections and refusal to provide responsive documents is unreasonable and lacks merit. Moreover, these Defendants have not, and cannot, demonstrate that the burden or expense of producing documents responsive to these requests outweighs the likely benefit of obtaining discovery regarding information that is highly relevant to these issues.

## A. Discovery Concerning Punitive Damages Is Appropriate

With respect to the requests related to punitive damages (#s 1, 2, 3, 4 and 5), the requests seek relevant financial information regarding these Defendants' ability to pay a substantial verdict that may include punitive damages given the egregious and fraudulent acts described during Mr. Rivera's deposition. Importantly, Plaintiffs only made these requests *after* these Defendants rejected a policy limits settlement opportunity and *after* Mr. Rivera testified he had falsified state-mandated chemical testings for several years. Such conduct is indisputably fraudulent, illegal and dangerous. Moreover, the conduct violates DHEC regulations under state law, endangered the general public and grievously harmed our client. That these Defendants allowed this to occur for several years due its reckless failure to supervise and monitor Mr. Rivera and to ensure a safe environment for its customers and the public is evidence that a jury certainly will be asked to consider in determining whether punitive damages should be awarded in this case. The violations of state regulations and statutes alone are a sufficient basis to raise the issue of punitive damages in South Carolina. The conduct is so conscience-shocking that punitive damages arguably are an inevitability at trial.

Given the gravity of the conduct at issue and the likelihood of a substantial punitive damages award at trial, Plaintiffs reasonably seek to undertake discovery regarding Defendants' financial ability to pay a punitive damages award. The information the Plaintiffs have requested is limited and relevant to that issue of damages. If discovery relevant to punitive damages is provided during trial after the Court determines punitive damages are recoverable, the Plaintiffs will not have sufficient opportunity to evaluate the information and determine the appropriate presentation of the information to the jury for consideration. FRCP Rule 26 permits discovery of any information that is relevant or may be relevant to an in issue in the case. Damages and the ability

to compensate the Plaintiffs are relevant issues in this case. There are ample mechanisms in place that the Defendants can seek from the Court to protect the information from disclosure outside of this litigation; however, simply refusing to provide relevant information in discovery is not consistent with broad discovery standards or reasonable under the circumstances in this case. Importantly, the Plaintiffs need this information to prepare arguments as to why punitive damages should be awarded and what that award should be. If, as the Defendants suggest, the information is to be provided only after the Court rules that punitive damages are to be considered, the Plaintiffs will be substantially prejudiced by the diminished ability to fully prepare these arguments for consideration by the jury.

"In order to receive an award of punitive damages, the plaintiff has the burden of proving by clear and convincing evidence the defendant's misconduct was willful, wanton, or in reckless disregard of the Plaintiff's rights." *Hundley v. Rite Aid of South Carolina, Inc.*, 339 S.C. 285, 311, 529 S.E.2d 45, 59 (Ct. App. 2000) (*Lister v. NationsBank, of Delaware N.A.*, 329 S.C. 133, 150, 494 S.E.2d 449, 458 (Ct. App. 1997)). The Supreme Court of South Carolina has held "that a violation of a statute is sufficient to carry the issue of punitive damages to the jury and that a violation of a statute may warrant the inference of reckless, willful, and wanton conduct." *Copeland v. Nabors*, 285 S.C. 340, 342, 329 S.E.2d 457, 458 (Ct. App. 1985) (*quoting Fisher v. J.H. Sheridan Co., Inc.*, 182 S.C. 316, 189 S.E. 356 (1936)). The applicable law in this area requires the Defendant to fully respond to the Plaintiff's discovery requests in this matter.

The Supreme Court of South Carolina has routinely "approved the use of the defendant's net worth as a proper guide in assessing the 'ability to pay' factor." *Branham v. Ford Motor Co.,* 390 S.C. 203, 240, 701 S.E.2d 5, 24 (2010) (*quoting Hicks v. Herring,* 246 S.C. 429, 437, 144 S.E.2d 151, 154 (1965)). The general rule in South Carolina remains that "the wealth of a defendant is a

relevant factor in assessing punitive damages." *Welch v. Epstein*, 342 S.C. 279, 307, 536 S.E.2d 408, 423 (Ct. App. 2000). In South Carolina, the trial court shall conduct a post-trial review and may consider the following factors:

> (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay and finally, (8) as noted in *Haslip*, "other factors" deemed appropriate.

*Myers v. Dollar Gen. Corp.*, 2017 U.S. Dist. LEXIS 83864 at *32 (D.S.C June 1, 2017) (*quoting Gamble v. Stevenson*, 305 S.C. 104, 11-12, 406 S.E.2d 350, 354 (1991)).

With regard to the factors laid out in *Myers, supra*, the degree of culpability lays entirely upon the hands of the Defendant and its Certified Pool Operator who admitted to fraudulent and illegal conduct. The duration of the conduct is approximately three years and only ceased when he was made aware of his deposition. Mr. Rivera made efforts to conceal his behavior for nearly three years in fraudulently completing the pool logs without actually checking the chemical levels of the pool. Of course, a large punitive award is necessary to prevent future similar conduct from these Defendants and other resorts and hotels in South Carolina. Finally, the Defendants' ability to pay is the crux of this motion, as the majority of the information sought to be compelled assists the Plaintiffs in evaluating whether the Defendants are able to pay a punitive award. When evaluating the facts set forth in *Myers*, it is clear that punitive damages may be sought by the Plaintiffs, awarded by a jury, and approved by this Court.

## B. Defendants Should Not Be Permitted To Conceal Records Relevant to Plaintiffs' Claims and That Evidence Defendants' Ongoing Fraud

Furthermore, Requests 6, 7 and 8 seek information relevant to determine the degree of negligence of Defendants' employee, Juan Rivera, as well as the Defendants themselves in monitoring, supervision, training and retaining him. Certainly, Defendants' boilerplate objections

are an insufficient basis for withholding this information, but also, the information sought is reasonable, necessary, sufficiently limited and proportional to the needs of the case as anticipated in FRCP Rule 26. Further, Defendants did not provide what the "sufficiently limited scope" that they would deem appropriate nor the documents that fit within that timeframe. Instead, the discovery was withheld forcing the Plaintiffs to spend additional time and resources towards preparing this case for trial.

## CONCLUSION

Based on the foregoing, Defendants' boilerplate objections and refusal to produce relevant and responsive documents is improper. Therefore, the Court should issue an order compelling Defendants to fully respond to Plaintiffs' Second Set of Requests for Production. Furthermore, because Defendants have acted in bad faith in its discovery efforts, the Plaintiffs are entitled to the costs and fees associated with addressing this matter before the Court.

The undersigned certifies pursuant to Rule 37(a)(1), FRCP, that counsel for the Plaintiffs have communicated with Defendants' counsel in a good faith attempt to resolve the matters contained within this motion.

LAW OFFICE OF KENNETH E. BERGER, LLC

s/Joel S. Hughes
Kenneth E. Berger | kberger@bergerlawsc.com
Fed. Bar No. 11083
Joel S. Hughes | jhughes@bergerlawsc.com
Fed. Bar No. 09796
5205 Forest Drive
Columbia, South Carolina 29206
Telephone: (803) 790-2800
Facsimile: (803) 790-2870

AND

TRIAL LAWYERS FOR JUSTICE

Nicholas C. Rowley | nick@tj4j.com
Brian J. Ward | brianward@tl4j.com

Erin L. Powers | erin@tl4j.com
548 Market St PMB 66906
San Francisco, CA 94104
Telephone: (310) 855-3727 ext. 415
Facsimile: (310) 855-3595
*Attorneys for the Plaintiff*

Columbia, South Carolina

February 10, 2023